[Civ. No. 1888.   Fourth Appellate District.—May 27, 1938.]

FRED W. NIGHBERT et al., Appellants, v. THE FIRST NATIONAL BANK OF BAKERSFIELD et al., Respondents.

Harry G. Henderson and Calvin H. Conron, Jr., for Appellants.

Borton, Petrini & Conron, Harvey & Johnston, Osburn & Burum, Frederick W. Welsh, Edward West, C. E. Arnold, Matthew S. Platz and Kendall & Howell for Respondents.

BARNARD, P. J.—This is an action for damages for fraud and deceit. The action was commenced on October 24, 1933, and this appeal is from a judgment following an order sustaining general and special demurrers to a fourth amended complaint. This order included the following:

"It further appearing that the causes of action, if any ever existed, are barred by the Statute of Limitations, the demurrers are sustained without leave to amend and the action is dismissed."

The complaint in question contains ninety-six causes of action. Except for a variation as to the number of shares purchased and amounts paid by the respective plaintiffs the allegations of the first cause of action are repeated in all of the others, and only the one cause of action need be here mentioned. For the sake of brevity, the defendant the First National Bank of Bakersfield will be herein referred to as the

bank, and the defendant The Citizens Land and Loan Company will be referred to as the corporation.

The amended complaint alleges as follows: That at all times therein mentioned the plaintiff has been the owner of 400 shares of common stock and 1200 shares of preferred stock of the corporation of the par value of $10 per share. That the bank is a national banking corporation with its principal place of business in Bakersfield. That at all times therein mentioned the corporation, organized under the laws of Delaware, was doing business in California with its principal place of business in Bakersfield, having been qualified to do business in this state on December 4, 1925. That between that date and August 1, 1929, there was issued 56,580 shares of preferred stock and 27,545 shares of common stock, which was sold to its stockholders for $841,250. That on December 4, 1925, and for a long time prior thereto all of the individual defendants were officers, directors, agents, employees and/or stockholders of the bank. That the plaintiff brings this action in his own behalf and not on behalf of the corporation. That he has made no demand upon the corporation to prosecute this action for the reason that its corporate powers are now suspended since it had failed to pay its franchise tax for more than three years prior to the filing of this complaint.

That on or before December 4, 1925, all of the defendants conspired to defraud the stockholders of the corporation in the sum of $841,250 and did defraud said stockholders in said amount by fraudulently inducing said stockholders to purchase stock in said corporation in the sum of $841,250. That the unlawful conspiracy and fraudulent scheme of said defendants consisted as follows, to wit: That on or before December 4, 1925, the bank through improvident loans made upon certain real properties had so impaired its liquid assets that certain bank examiners threatened to close said bank. That in furtherance of said conspiracy and fraudulent scheme the defendants caused the corporation to be organized under the laws of Delaware and caused certain of these individual defendants to be chosen as its first directors; that these persons were largely interested in the bank, and none of them had substantial investments in the corporation; and that these persons, in furtherance of the conspiracy, caused the corporation to become qualified to do business in California. That on December 18, 1925, the directors of the corporation met

and elected officers of said corporation, and that at said meeting and in furtherance of said conspiracy and fraudulent scheme the defendant Holm and the defendant Murray made a written proposal to sell and transfer eleven described parcels of real property to the corporation for $223,471.41 in cash and 25,000 shares of the common stock of this corporation. That at that time neither Holm nor Murray owned any of said real property and they were, in fact, acting for the bank. That said real properties were not in the aggregate of a reasonable market value to exceed the sum of $120,000 and were in part encumbered to the extent of $40,-000. That the directors of the corporation voted to accept said offer and to pay for said real property the sum of $223,471.41 in cash to the bank and to issue 25,000 shares of the common stock of the corporation, thus knowingly and intentionally defrauding the stockholders of that corporation of the sum of $393,471.41, being the difference between the real market value of said real property and purchase price of the land as above set forth.

That thereafter and prior to April 21, 1926, in pursuance of said conspiracy and fraudulent scheme the directorate of the corporation was increased by adding six members thereto. That on April 10, 1926, in pursuance of said conspiracy and fraudulent scheme the bank executed two grant deeds purporting to transfer the described real properties to the defendants Holm and Murray; that on the same day Holm and Murray, with their respective wives, executed two grant deeds transferring said properties to the corporation; that at the same time and in pursuance of said conspiracy the president and secretary of the corporation executed a promissory note for $167,471.41 with interest at 4 per cent payable to the bank, secured by a deed of trust covering said real properties; and that this note was executed as the balance of the cash consideration for the purchase of said properties, there having been paid to the bank between December 18, 1925, and April 21, 1926 the sum of $56,000 taken from money paid by the stockholders for shares of stock in the corporation. That the making of each and every one of said instruments was in fact the act of the bank and no one of said instruments was in truth and fact the act of the corporation; that each of said instruments was but a means and device used by said bank and its agents in the furtherance of said conspiracy;

that the four deeds above referred to were recorded on May 7 and May 8, 1926; and that the trust deed was acknowledged on April 21, 1926, and recorded in Kern County on October 25, 1929, in Tulare County on October 11, 1929, and in Fresno County on October 14, 1929.

That in furtherance of said conspiracy and fraudulent scheme and in order to provide means for the payment of the 4 per cent interest called for by said note and trust deed one income property in Bakersfield, known as the "Willis Hotel Property", was included among the parcels of real estate which were thus transferred; that the corporation was at no time able to sell any of the described real property save and except the Willis Hotel property; that the defendant bank well knew when the transfer was made that none of the said real property was salable except the Willis Hotel property; that on May 24, 1928, for the use and benefit of the bank and in pursuance of said conspiracy the corporation, first having obtained the consent of the bank, sold the Willis Hotel property to one Gilbert Beesmyer at an agreed purchase price of $88,000, which purchase price was paid partly in cash and partly in notes secured by a deed of trust on said property; that said cash payments and notes were delivered to the bank by said Beesmyer and subsequent payments thereon were made to the bank; that subsequently $45,000 was paid to the bank by Beesmyer; that in October, 1930, the bank, without the knowledge or consent of the corporation, made an independent adjustment, settlement and contract with the said Beesmyer by and through which the corporation was eliminated from seeming interest in said Willis Hotel property and the proceeds thereof; and that the said defendant bank had the income from said Willis Hotel property at all times.

That from December 4, 1925, to August 2, 1929, the bank, in pursuance of said conspiracy, retained complete control over the corporation; that 50,000 shares of common stock represented all of the voting stock in the corporation; that the bank held 25,000 of such shares and kept control of the corporation by preventing the issuance to others of more than 2,545 shares of said common stock; that by reason of said control the bank caused the note secured by the trust deed to be foreclosed upon all of said real property, including the

Willis Hotel property; and that the bank has since held a purported title to all of said property.

It is then alleged that the scheme and conspiracy and fraudulent acts above set forth were not discovered by the plaintiff until after the 22d day of June, 1931, and that the circumstances under which the fraud was discovered were as follows: That during the latter part of the year 1930 and the year 1931, upon the recordation of a notice of default under the terms of said deed of trust, which notice of default was recorded on November 26, 1930, the plaintiff and others employed an attorney and accountant to investigate the affairs of the corporation; that said investigation first concerned itself with the transfer ''hereinafter'' alleged of the assets of the corporation to the Prudential Holding Company of Los Angeles and said investigation continued until the month of August, 1933, when said investigation was completed, and this plaintiff had his attention first directed to an answer, counterclaim and cross-complaint which had been filed on June 22, 1931, in an action in the United States District Court in which the bank was plaintiff and the corporation and the Prudential Holding Company of Los Angeles were defendants, ''which document in substantial form correlated such scheme and design and first called to this plaintiff's attention the fact that these defendants had during all the time set forth in said complaint up to and including the filing of said action last herein mentioned, and working upon a common scheme and/or design calculated to render and in fact rendering plaintiff's purchase of stock as herein set forth valueless from its inception''; that the parties to said action in the federal court had refrained from giving the matter any publicity in the county of Kern or in any way to mention or make public the fact that there existed any such action or any such defense to such alleged action; and that plaintiff is not a party to said action and had no knowledge of the facts pleaded in that action until the same were called to his attention upon the completion of said investigation.

It is then alleged that the individual defendants occupied high positions of trust and confidence in and around the city of Bakersfield; that the people of that city placed ''implicit'' faith and confidence in each of them; that these facts were known to the plaintiff and by reason thereof he placed ''implicit'' trust and confidence in each of them; that the plaintiff

had no reason to doubt the honesty and integrity of these defendants until November 26, 1930, when the notice of default in connection with the trust deed was recorded; and that at all times up to November 26, 1930, in pursuance of said conspiracy the defendants concealed their actions, as follows: (a) by paying dividends on the stock in the corporation on December 31, 1927, March 31, 1928, and June 30, 1928, although no profits then existed out of which such dividends could properly be paid; (b) by withholding the recordation of the trust deed above referred to until December 5, 1929 (this date seems to be an error); (c) by entering into an agreement on August 2, 1929, by which the entire assets of the corporation, save and except its corporate franchise and good will, were transferred to one W. L. McEwan who in turn transferred said assets to the Prudential Holding Company of Los Angeles ''and immediately after such transfer said conspiring individual defendants resigned from their respective positions as officers and directors of the Citizens Land & Loan Company''.

It is then alleged that, misled by the aforesaid fraudulent acts of the defendants and relying upon the false and fraudulent representations as to the value of the stock, the plaintiff purchased 1600 shares of stock in the corporation for the sum of $16,000 and that by reason of the aforesaid acts of the defendants the plaintiff has been damaged in the sum of $16,000.

The first questions presented are whether a cause of action for damages for fraud is stated by the amended complaint and whether one is stated in favor of these appellants. It is alleged that the respective appellants were stockholders of the corporation at all times referred to in the complaint and while it is alleged that each of them was misled by the fraudulent acts of the defendants into relying upon the false and fraudulent representations as to the value of the stock it is not alleged that any representations as to the value of the stock were made. In fact, it is not alleged that any representation was ever made or to whom or by whom one was ever made. It is neither alleged that the stock was offered as being worth par nor is there any allegation showing the actual value of the stock purchased which ordinarily is necessary in order to show that the plaintiff has suffered damage. (*Gutterman* v. *Gally,* 131 Cal. App. 647 [21 Pac.

(2d) 1000].) There are no allegations of injury proximately resulting from any specific representations and the ordinary requirements of an action for damages based upon fraud and deceit are lacking. (See *Colmar* v. *Pinckard,* 3 Cal. App. (2d) 213 [39 Pac. (2d) 262].) The appellants argue that the fraud complained of may be manifested by acts and a course of conduct as well as by spoken misrepresentation. However, the allegation is that these plaintiffs were induced to purchase stock by false representations as to the value thereof without stating what, if any, representations were made and there are neither allegations to the effect that they were induced to purchase stock by the general acts of the defendants nor allegations showing what the stock was actually worth, nor what they received therefrom.

The essence of the complaint seems to be that through a conspiracy with the other defendants the directors of the corporation bought for the corporation certain real property, agreeing to pay more than it was worth, with the preconceived plan that the real property was later to be taken back by the bank through foreclosure of the deed of trust given in part payment therefor, and that the directors of this corporation later transferred all of its assets to a third party, the effect of which transactions was to decrease or destroy the value of the stock held by the plaintiffs. Not only was the value of these parcels of real property, at the time they were transferred from the bank to the corporation, necessarily a matter of opinion but if the allegations of the complaint be deemed sufficient to charge fraudulent acts on the part of the defendants it would seem that this fraud was one against the corporation itself rather than against individual stockholders, and since any fraud in connection with the purchase of these lands by the corporation was made possible by the acts of the directors of that corporation the case would seem to fall within the rules laid down in *Anderson* v. *Derrick,* 220 Cal. 770 [32 Pac. (2d) 1078]. In that case the court said:

"In the absence of statute, it is the generally accepted rule that misfeasance or negligence on the part of the managing officers of a corporation, resulting in loss of its assets, as alleged herein, is an injury to the corporation for which it must sue. A stockholder cannot sue for damages because his stock is thereby rendered worthless. (Citing cases.) In

the Niles case, *supra* (*Niles* v. *New York Cent. & H. R. R. Co.*, 176 N. Y. 119 [68 Pac. 142]), as here, the stockholder sought to recover damages at law for the depreciation in the value of his stock, which depreciation, in common with the loss to other stockholders, resulted from the acts of the corporate directors. In denying such relief it is therein declared: 'True, the plaintiff has suffered a depreciation in the value of his stock as a result of the wrong, and in this respect the injury was personal to the holders of the stock. But every stockholder has suffered from the same wrong, and if the plaintiff can maintain an action for the recovery of the damages sustained by him, every stockholder must be accorded the same right. The injury, however, resulting from the wrong was, as we have seen, to the corporation. The depreciation in the value of the plaintiff's stock, and that of the other stockholders, was in consequence of the waste and destruction of the property and franchise of the corporation'. In 13 Fletcher, Cyc. Corporations, page 227, section 5913, the principle is stated as follows: 'individual stockholders cannot sue corporate officers for damages on the ground of mismanagement, on the theory that such mismanagement has rendered their stock of less value or worthless, since the injury is not to them individually, but to the corporation, i. e., the stockholders collectively . . . It is only where the injury sustained to one's stock is peculiar to him alone, and does not fall alike upon other stockholders, that he can recover as an individual.' ''

It is not alleged here that the rights of creditors or of other stockholders are not involved and it is particularly alleged that each of the plaintiffs bring the action in his own behalf and not in behalf of the corporation. The amended complaint alleges that the plaintiffs had not asked the corporation to prosecute this action since its franchise taxes had not been paid for more than three years. It is not alleged how long this condition had prevailed and this amended complaint was filed on February 1, 1937. ■ In answer to the contention that the cause of action, if any, existed in favor of the corporation and not of the plaintiffs as individuals, the appellants argue that the court should now disregard the corporate entity of the corporation on the theory that the corporation was but the *alter ego* of the stockholders, and that in such a case equity, when necessary to circumvent fraud and accom-

plish justice, will disregard the corporate existence. The doctrine referred to has been applied to protect the rights of third persons who have dealt with a corporation or its stockholders under circumstances where it would be inequitable to distinguish between the corporation and its stockholders as separate entities. The doctrine has been employed where a corporation has committed the wrong in order to permit the plaintiff to recover against the party actually responsible, but it has never been applied where the alleged wrong is to the corporation itself and should not be applied where its effect would be to permit a stockholder to seize assets properly belonging to a corporation and thereby deprive other stockholders and creditors of something properly belonging to the corporation and in which they were entitled to share.

Aside from the considerations above suggested we think the trial court's holding that this action was barred by the statute of limitations must be upheld. The main wrong complained of is the selling of certain lands to the corporation for more than they were worth as the result of a conspiracy which included an intention to later take the lands away from the corporation. The selling of the land was completed in April, 1926, and this action was not commenced until October 24, 1933, some seven and one-half years later. There is an attempt to allege a further fraud on the part of the directors of the corporation in conjunction with the other defendants in that they transferred all of the assets of the corporation to a third party on August 2, 1929, although the terms of that transfer are not disclosed other than through the allegation that the plaintiffs were damaged to the full amount they paid for their stock, which leaves the inference that nothing was received by the corporation through the transfer of these assets. In any event, the first complaint in this action was not filed for more than four years after this transfer of assets. It is conceded that this action is barred by the statute of limitations unless the allegations of the complaint bring it within the exception mentioned in section 338 of the Code of Civil Procedure.

In an action seeking relief from fraud which was commenced more than three years after the perpetration of the fraud the plaintiff is held strictly to the rules of pleading. (*Haley* v. *Santa Fe Land Imp. Co.,* 5 Cal. App. (2d) 415 [42 Pac. (2d) 1078].) It is well settled that in such a case

the complaint must allege when the fraud was discovered, the circumstances under which it was discovered and facts sufficient to show that the plaintiff is not at fault in failing to discover the fraud sooner, and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. (*Original Mining & Milling Co.* v. *Casad,* 210 Cal. 71 [290 Pac. 456]; *Collins* v. *Texas Co.,* 123 Cal. App. 60 [10 Pac. (2d) 773].)

Strictly speaking, this complaint fails to allege when the conspiracy and scheme complained of were discovered by the plaintiffs. It is alleged that they were not discovered until after the 22d day of June, 1931, and the appellants argue that it may be inferred from other allegations that the discovery was made in August, 1933. It may well be doubted whether the circumstances under which this purported fraud was discovered were sufficiently alleged. It is alleged that an investigation was begun after recordation of the notice of default on November 26, 1930, and that the investigation was completed in the month of August, 1933, when the plaintiffs had their attention first directed to an answer, counterclaim and cross-complaint filed in an action in a federal court. While it is alleged that this document in substantial form correlated the scheme and design charged to the defendants and called to the attention of the plaintiffs the fact that these defendants had been working upon a common scheme or design calculated to render the plaintiffs' purchase of stock valueless from its inception, nothing is alleged other than this conclusion and the facts and circumstances which were thus disclosed to the appellants and which led to the discovery of the fraud are not set forth.

Without further going into these matters we think the complaint fails to allege facts showing that the appellants were not at fault in failing to discover the alleged fraud sooner and that they did not have actual or presumptive knowledge of facts sufficient to put them on inquiry. It is not disputed that the main facts concerning the purchase of these real properties from the bank by this corporation, with the character and nature of the transaction and the price paid, were spread upon the records of the corporation early in 1926, and the contrary is not alleged in the complaint. A cursory examination of the records of the corporation would have disclosed the essential facts as to what lands were being pur-

chased and what price was paid. In *Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809], the court said:

"If there were other stockholders, they were chargeable with knowledge of all the acts of the directors which were spread upon the records of the corporation, and of all the facts connected therewith that the inquiry suggested thereby would have disclosed. Between the time that these transactions were had, and the commencement of this action, more than three years elapsed, and it is to be presumed that there were three annual meetings of the stockholders during that time, at each of which they could have ascertained all of the facts connected with the release. Whether they did ascertain them, and made no objection thereto, or whether they neglected to inform themselves, is immaterial. They cannot be permitted to question their validity after the lapse of more than three years from the time when they should have ascertained them. Nor can the plaintiff, as their representative, claim that, with such opportunities for ascertaining the facts, it had no opportunity to ascertain them. 'The shareholders of a corporation cannot avoid responsibility for the unauthorized acts of their agent, by abstaining from inquiry into the affairs of the company, or by absenting themselves from the company's meetings, and at the same time reap the benefit of their acts in case of success.' "

The county records would have shown the deeds in question and the corporation records would have shown the nature of the transaction as early as April, 1926, including the fact that the note given was payable to the bank. While the deed of trust securing that note was not immediately recorded it was recorded more than the statutory time before this action was brought. Dividends were paid on December 31, 1927, and up to June 30, 1928, and then ceased. The corporation records would presumably have shown whether or not said dividends were properly payable. Not only would the cessation of dividends naturally call for some inquiry on the part of the stockholders as to what was the condition of the corporation but it is affirmatively alleged that on August 2, 1929, the directors of the corporation entered into an agreement for the sale to a third party of all of the assets of the corporation save and except the corporate franchise and good will, and that immediately thereafter those persons resigned their respective positions as officers and directors of the cor-

poration. The transfer of all of the assets of the corporation and the resigning of all its directors was followed by the recording of the trust deed, and all of these events took place more than the statutory time before this action was filed. These facts are extremely suggestive of an unusual situation, and taken in consideration with the preceding facts, including those which were a matter of record on the county records and upon the records of the corporation, were sufficient to at least place the burden of making an inquiry upon the appellants.

The facts alleged in the amended complaint not only fail to show that the appellants were not at fault in failing to discover the alleged fraud at an earlier date but rather clearly show actual or presumptive knowledge on their part of facts which should have put them on inquiry and which, if followed up, would necessarily have led to an earlier discovery of the facts in question. While fraud must not be encouraged it is equally the policy of our law to prevent the making of such a claim after the lapse of many years. While an exception is provided for in the statute referred to it was incumbent upon the appellants to bring themselves within that exception and this, in our opinion, they failed to do after filing five complaints. Under these circumstances the court correctly sustained the demurrers without leave to amend.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1938.