[Civ. No. 2626.   Fourth Dist.   July 14, 1942.]

ROY CAMPBELL, as Trustee, etc., Appellant, v. A. OTIS BIRCH et al., Respondents.

Syril S. Tipton for Appellant.

George Edward Acret for Respondents.

Chas. L. Nichols, as Amicus Curiae, on behalf of Respondents.

BARNARD, P. J.—This is an action for declaratory relief. It is another of the actions which arose out of a breach of the covenants of a ninety-nine-year lease and the formation of certain corporations as described in the case of *Campbell* v. *Birch*, 19 Cal. (2d) 778 [122 P. (2d) 902]. In that case, a claim for damages on the ground that a modification of the terms of the lease had been secured through fraudulent representations that the stock of the corporations had been pledged to a Miss Minter as security for a large existing indebtedness was upheld. In the instant case, it was sought, without alleging fraud and without seeking to set aside any transfers, to have it held that the assets which had been transferred to the corporations in exchange for all of the stock thereof, as distinguished from the corporate stock itself,

were subject to the levy of an execution on judgments obtained by the plaintiff for unpaid rentals under the ninety-nine-year lease. The plaintiff's theory seems to have been that upon pleading and proving that all or nearly all of the property owned by Mr. and Mrs. Birch had been transferred to the corporations and that all of the stock of the corporations is owned by them he was entitled to a judgment declaring that an execution on his judgment might be levied directly upon the assets held by the corporations.

The complaint alleges a failure to pay the rent under the lease after April 1, 1937, and the recovery of judgments amounting to $14,321.42 against A. Otis Birch and M. Estelle C. Birch; that Mr. and Mrs. Birch owned 100 per cent of the stock of the Birch Holding Company, a corporation, which in turn owned 100 per cent of the stock of Birch Ranch and Oil Company and of the Birch Securities Company; that Birch Ranch & Oil Company owns an 87½ per cent copartnership interest in Birch-Royer Oil Company, a copartnership, and also owns about 71 per cent of the copartnership interest of Birch Oil Company, another copartnership; that A. Otis Birch operates, governs and has complete charge of the operations of all of the corporations and copartnerships above mentioned; that prior to October 15, 1934, Mr. and Mrs. Birch owned all of the properties now owned by the above named Birch corporations; that the Birch Holding Company, Birch Ranch & Oil Company and Birch Securities Company were organized for the express purpose of owning and operating the properties of Mr. and Mrs. Birch; and that these three corporations, the Birch Oil Company and the Birch-Royer Oil Company are the double or *alter ego* of Mr. and Mrs. Birch. A second cause of action sets up a claim for attorney's fees. The prayer is that the three corporations and the two copartnerships be declared to be the *alter ego* of the Birches, that all properties and assets of the three corporations and the two copartnerships be declared to be the property and assets of Mr. and Mrs. Birch, and that said property be subject to levy in satisfaction of the plaintiff's judgments, and for attorney's fees as against Mr. and Mrs. Birch.

This case was tried while the above-mentioned case of *Campbell* v. *Birch* was pending on appeal. Very little evidence was received, aside from the introduction of certain exhibits, and about thirty pages of the typewritten tran-

script covers all of the testimony. The court found, among other things, that the defendant A. Otis Birch has had, and now has, no authority in connection with the operation or control of the defendant corporations other than as a manager subject to the control of the directors of each of said corporations; that following the sale of the stock of these corporations to Stanley C. Benson in 1935 the said Benson named the directors of the corporation and for a period of about 2½ years "said defendants were not shown by the evidence to have any authority at all"; that each of said corporations and copartnerships are engaged in separate businesses and each has different creditors separate and apart from the credit and liability of the Birches and separate and apart from each other; that the total amount of such indebtedness of said corporations and copartnerships is at least $800,000; that at the time of the organization of the three corporations Mr. and Mrs. Birch transferred to said corporations various portions of their property, not including certain real property of the value of $200,000; that subsequently the Birches lost this real property by foreclosure but a portion thereof was acquired by Hollymont Corporation and later acquired by the Birch Ranch & Oil Company as a part of the consideration when Birch repurchased from Benson the stock of the Birch Holding Company in November, 1937; that in 1935, the Birches transferred and assigned to Benson all of the stock of the Birch Holding Company, subject to a pledge thereof to secure an indebtedness of $155,000 to Lulu M. Minter and further subject to a pledge of said stock to Anna M. Conaway securing an indebtedness of $76,000; that subsequently the Birches reacquired from Benson all of the said stock of the Birch Holding Company subject to the indebtedness to Minter and Conaway, all of which continues to exist; that none of the said corporations or copartnerships is the *alter ego* of the other defendants or copartnerships or of the Birches, or either of them; that the defendant corporations and copartnerships have never had any dealings with the plaintiff or with the property involved in the ninety-nine-year lease; and that at the time these corporations and copartnerships were formed the Birches were not in default in the payment of rentals under the lease and no such default was contemplated. As conclusions of law, the court found that these corporations and copartnerships are not the *alter ego* of the Birches and that none of the prop-

erty or assets of the corporations or copartnerships is subject to levy of execution by the plaintiff. A judgment to the same effect was entered and the plaintiff has appealed.

No question is here involved as to who was originally liable on the ninety-nine-year lease or who is liable now. No attempt has been made to assign that lease either with reference to the liability for rent or as to the possession of the leased property. The corporations and copartnerships, as such, have had nothing to do with the lease or the leased property. No attempt was here made to set aside any transfers as having been fraudulently made. The appellant contends that an allegation of fraud is to be implied from the allegation that these companies were the *alter ego* of the Birches. This is not necessarily true insofar as the matter is here presented, and no specific amendment was offered during the trial although appellant's attention was called to the deficiency in the complaint. The appellant's contention that he was unduly restricted in the introduction of evidence is without merit and the record shows that no real attempt was made to enlarge or change the issues during the trial and there was no offer of proof in support of any such theory. It was stipulated, and the court found, that there was no past due indebtedness in connection with the ninety-nine-year lease at the time the corporations were formed. There is evidence, and the court found, that these corporations owed more than $800,000 to other creditors for which the Birches were not directly liable and there is no contention that these were not legitimate debts. The appellant argues in his briefs that all of this indebtedness is secured, but there is no evidence to that effect in the record. While the court found that there was an existing indebtedness of the Birches in favor of Lulu M. Minter, the Supreme Court has held otherwise in *Campbell* v. *Birch, supra.* While the court found that there was an existing indebtedness to Anna M. Conaway, secured by a pledge of the stock of these corporations, we can find no evidence of this other than a statement of such a situation at that time contained in the 1935 agreement between Birch and Benson, which agreement was introduced in evidence. Disregarding immaterial matters, the controlling question here is whether, in an action of this nature, evidence to the effect that all or practically all of the property of the Birches was transferred to these corporations in exchange for all of the stock thereof compels

the conclusion that these corporations were the *alter ego* of these individuals within the meaning of that doctrine, with the further effect that the property so transferred to the corporations may be directly levied upon by the appellant as the property of the individuals and in disregard of the corporate entities and debts.

There is no question that a separate corporate entity may be disregarded in a proper case and upon sufficient pleading and proof. The general principles governing such a situation are thus stated in *Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673] : "Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and *vice versa,* the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." The doctrine has usually been applied for the purpose of imposing liability under a contract upon a person or corporation on account of an obligation ostensibly made by the one but which, in equity, should also bind the other. Examples are to be found in the cases of *Shea* v. *Leonis,* 14 Cal. (2d) 666 [96 P. (2d) 332] and *Marr* v. *Postal Union Life Ins. Co.,* 40 Cal. App. (2d) 673 [105 P. (2d) 649]. It may be assumed that the doctrine of *alter ego* could be applied in a proper case where all of the person's property is transferred to a corporation organized for the purpose of receiving the property in order to prevent the collection of a judgment obtained against the transferor. The appellant cites *Sunset Farms Inc.* v. *Superior Court,* 9 Cal. App. (2d) 389 [50 P. (2d) 106], as being such a case. While the theory of *alter ego* was there applied, it appeared that the assets in question were transferred to the corporation without any consideration therefor. This circumstance justified equitable relief under the established rule pointed out in *Minifie* v. *Rowley, supra.*

In the instant case, there was no attempt to get rid of the assets by transferring them without consideration to another entity. The assets in question were transferred to the corporations in exchange for all of their stock which was still

held by the Birches, who still owned and held property of the same value as they had before. Of itself, this change in the form of the assets neither affected the obligation of the lease nor the enforcement thereof and there is nothing in that, standing alone, which would in any way make it inequitable to recognize the separate entities of the corporations or sanction a fraud or promote injustice. The assets, although changed in form, were still in the hands of the same individuals and still subject to levy on execution.

If, as now claimed in the briefs but not alleged in the complaint, this corporate stock was improperly assigned as security to Miss Minter that matter would present another question as to the right of the Birches to prefer that creditor, but is immaterial upon the question as to whether the identity of the corporations should be ignored as presented in this action. Moreover, the assignment to Miss Minter was held invalid in *Campbell* v. *Birch, supra.* It is further argued that this stock was also assigned as security to Mrs. Conaway. Assuming this to be true, it furnishes no reason for ignoring the corporate entities in the absence of proper pleading and proof.

A further consideration is the matter of the large obligations incurred by these corporations and the rights of its other creditors. While the appellant had a right to levy upon the Birches' interests as stockholders in the corporations and sell the same at execution, it is a far different matter to say that he has the right, under such a showing as was here made, to take the assets of these corporations away from their creditors on the theory that the separate entity of the corporations should be ignored. In *Nighbert* v. *First Nat. Bk. of Bakersfield,* 26 Cal. App. (2d) 624 [79 P. (2d) 1105], this court said: "The doctrine has been employed . . . in order to permit the plaintiff to recover against the party actually responsible, but it . . . should not be applied where its effect would be to permit a stockholder to seize assets properly belonging to a corporation and thereby deprive other stockholders and creditors of something properly belonging to the corporation and in which they were entitled to share." Similar considerations are applicable here.

The Birches, at least after the cancellation of the Benson agreement in 1937, owned and possessed property of exactly the same value as that possessed by them before the organization of the corporations. Assuming that complete

unity of interest and ownership appears as between the Birches and the corporations, the second requisite of the rule in question is lacking. Not only does it not appear that a continued recognition of the separate existence of the corporations would sanction a fraud or promote injustice, but it more probably appears that to ignore the separate entity of the corporations would work an injustice as to the creditors of the corporations. So far as disclosed by the record before us, the appellant has his remedy by proceeding against the property admittedly owned by the Birches, their corporate stock, and no reason appears for thus preferring the appellant over the creditors of the corporations.

As we view the record before us, it would have supported no other conclusion and judgment than that drawn and entered by the trial court. The appellant now complains because at the hearing of his motion for a new trial the trial court refused to allow him to reopen the case for further evidence and refused to allow him to file an amended complaint which was then proffered. The case had previously been reopened for further evidence, no substantial reason for a still further delay was given, the offered complaint was still not sufficient and no abuse of discretion appears.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 10, 1942.