THE COURT
 

 The plaintiff corporation is engaged in - the wholesale lumber business. Plaintiff brought this action to foreclose mechanics’- liens upon residence properties constructed by the defendant corporation as a part of a tract development. Liens were asserted against each of the residence properties and a judgment was rendered in favor of plaintiff
 
 *881
 
 for the foreclosure of such liens. The defendant appeals from this judgment.
 

 The questions involved in this appeal arise out of the activity of three individuals: Harold A. Bailey, Robert L. Butts, and Prank Procopio. It appears from the evidence that Bailey and Butts had been in the business of purchasing and selling building materials. At one time they had, together with one Booth, formed a corporation known as “Booth Lumber Company.” Later Mr. Booth ceased to be involved in their transactions. It appears that shortly before the contract was made with the defendant, Mr. Bailey and Mr. Butts formed a corporation under the name of “Trus-Span” for the purpose of buying and selling building materials. Another corporation known as “Cal-Mar” was formed by Mr. Bailey, Mr. Butts, and Mr. Procopio. This corporation was formed for the purpose of acting as framing contractors for the construction of buildings. Trus-Span was licensed as a seller of materials; Cal-Mar was licensed as a contractor.
 

 Mr. Procopio approached Mr. Goldvarg, president of the defendant corporation, and solicited a contract for the construction of the framing of the proposed residence buildings. He advised Mr. Goldvarg that he could obtain for him a good price for the materials from a corporation with which he had connections. Mr. Butts then interviewed Mr. Goldvarg, together with Mr. Procopio, and the contracts were entered into whereby Trus-Span agreed to sell materials at agreed prices and Cal-Mar agreed to do the framing work for fixed prices. Mr. Goldvarg testified that it had been his practice in construction projects to have the contracts for furnishing materials and for furnishing labor separate and distinct in order that he could better control the situation.
 

 Arrangements were made with the plaintiff for the purchase of material necessary for these buildings. The arrangement was made that “built-up loads” would be prepared by plaintiff and delivered direct to the property, each load to contain the material for the house to be constructed on that location. The testimony was that the purpose of the plaintiff in arranging for the delivery of the material in this fashion was to “protect its lien rights.” It developed, however, that the matter of so delivering the built-up loads was never discussed with the defendant nor was anything said to the officers of defendant to the effect that the plaintiff was relying upon lien rights.
 

 
 *882
 
 This arrangement was carried out and the lumber was delivered in built-up loads. The evidence is clear that loads were made up for each house and apparently the lumber so delivered was used in the construction of the house at such location.
 

 The trial court was inclined to the opinion that inasmuch as the lumber and materials were furnished for use in the specific buildings, and were actually so used, the plaintiff furnishing such material was entitled to a mechanic’s lien. This was based upon cases such as
 
 John
 
 A.
 
 Roebling Sons Co.
 
 v.
 
 Bear Talley Irrigation Co.,
 
 99 Cal. 488 [34 P. 80] ;
 
 Weatherly
 
 v.
 
 Van Wyck,
 
 128 Cal. 329 [60 P. 846];
 
 Ensele
 
 v.
 
 Jolley,
 
 188 Cal. 297 [204 P. 1085] ;
 
 San Pedro Lumber Co.
 
 v.
 
 Kreis,
 
 111 Cal.App. 466 [295 P. 890], and similar cases. These cases hold that in order to establish a lien for materials it is necessary to allege and prove that the materials were furnished and used in the structure and were actually so used. In other words, it is the holding of these cases that the mere sale of lumber, to a contractor for instance, without reference to the building in which it is to be used, furnishes no basis for a mechanic’s lien.
 

 However, these cases do not undertake to state that any person who furnishes material to be used in the construction of a building is entitled to assert a mechanic’s lien. It is contended by the appellant that one who furnishes materials to a person who is himself a materialman is not entitled to a lien. The California eases appear to support this contention; thus, a lumberyard that furnishes the building material to the building contractor for use in the construction of a building is entitled to a mechanic’s lien; but the manufacturer of lumber or the wholesaler of lumber who furnishes material to the lumberyard is not entitled to the lien. In
 
 John A. Roebling’s Sons Co.
 
 v.
 
 Humboldt Electric Light & Power Co.,
 
 112 Cal. 288 [44 P. 568], it is held that “. . . .as the statute makes no provision for a lien in favor of one who simply sells materials to another who is himself but a materialman, the plaintiff’s case has no proper foundation upon which to rest.” The court cites
 
 Hinckley
 
 v.
 
 Field’s Biscuit etc. Co.,
 
 91 Cal. 136 [27 P. 594] ;
 
 Sparks
 
 v.
 
 Butte County etc. Mining Co.,
 
 55 Cal. 389, and other eases. (See
 
 Wilson
 
 v.
 
 Hind,
 
 113 Cal. 357, 359 [45 P. 695].)
 

 In
 
 L. W. Blinn Co.
 
 v.
 
 American Cement Products Co., 51
 
 Cal.App. 479 [197 P. 142], the court observed that “. . . the
 
 *883
 
 rule, which seems to be well established in this state, that persons who occupy the position of vendors of materials to a materialman and who are only such vendors, are not entitled to liens for the materials sold and delivered.” (See
 
 Harris & Stunston, Inc.
 
 v.
 
 Yorba Linda Citrus Assn.,
 
 135 Cal.App. 154 [26 P.2d 654].)
 

 The trial court held, however, that the two corporations, Trus-Span and Cal-Mar, were but the
 
 alter egos
 
 of the individuals, Bailey, Butts and Procopio. It held, therefore, that the sale of lumber to Trus-Span was, in fact, a sale of lumber to the framing contractor and that, therefore, as the loads of lumber were sold for use in the particular buildings and were used for that purpose, the right to liens was established.
 

 It would serve no useful purpose to review in detail the voluminous testimony which was received upon this feature of the case. It is sufficient for the purposes of this opinion to state that were this an action against these individuals to hold them personally liable for the obligations of these corporations upon the
 
 alter ego
 
 theory, the evidence introduced in this action would be sufficient to justify a judgment against them.
 

 The difficulty with this situation, however, is that neither Trus-Span nor Cal-Mar nor the individuals who organized them are parties to this action. It appears that the plaintiff, who was in the business of selling lumber at wholesale, sold the materials in question to Trus-Span at wholesale prices, plus an additional charge for making up the built-up loads. The materials thus sold were charged to Trus-Span on an open account. The defendant made its contract with TrusSpan for the purchase of these materials for which defendant agreed to pay a larger price than that charged to Trus-Span. In other words, Trus-Span was making a profit from the purchase and sale of the material. There is no evidence in the record that there was any bad faith on the part of the defendant or that defendant knew of facts which would indicate that the corporations were but the
 
 alter egos
 
 of the individuals. It is the fact that no permit to issue stock was granted to either corporation and apparently no stock was actually issued. The fact remains, however, that both corporations were organized and charters were issued and filed for record.
 

 The general purpose of the
 
 alter ego
 
 theory is to look through the fiction of the corporation and to hold the in
 
 *884
 
 dividuals doing business in the name of the corporation liable for its debts in those cases where it should be so held in order to avoid fraud or injustice.
 
 (D. N. & E. Walter & Co.
 
 v. Zuckerman, 214 Cal. 418 [69 P.2d 839, 79 A.L.R. 329].) Generally speaking, in order to enforce the
 
 alter ego
 
 theory bad faith must be shown.
 
 (Hollywood Cleaning & Pressing Co.
 
 v.
 
 Hollywood Laundry Service, Inc.,
 
 217 Cal. 124 [17 P.2d 709];
 
 Wilson
 
 v.
 
 Stearns,
 
 123 Cal.App.2d 472 [267 P.2d 59];
 
 Luis
 
 v.
 
 Orcutt etc. Co.,
 
 204 Cal.App.2d 433 [22 Cal.Rptr. 389].)
 

 It is to be noted that in the reported cases there is involved a situation where the purpose of the action is to hold the individuals responsible for the debts created by the corporation operated by them. It would seem to follow that no such ruling could properly be made in an action in which neither the corporation nor the individuals were parties. Illustrative is
 
 Minton
 
 v.
 
 Cavaney,
 
 56 Cal.2d 576 [15 Cal.Rptr. 641, 364 P.2d 473]. In that action the defendant was the owner of the stock of a corporation; an action was brought against the corporation to establish a tort liability, and the corporation was held liable. Thereafter, action was brought against Cavaney to hold him personally responsible under the
 
 alter ego
 
 theory. It was held that Cavaney was using the corporation for the conduct of his own business and that it would be unjust to permit him to escape liability on the theory that the obligation was that of the corporation alone. It was held that the
 
 alter ego
 
 theory could be resorted to in a tort liability as well as in a contract liability. The court held further, however, that judgment was improperly rendered against Cavaney because there was no proof of the liability except the judgment against the corporation which was rendered in an action in which Cavaney, the individual, was not a party, and that in order to establish such personal liability the tort liability must be established against him.
 

 Another ease which throws considerable light upon the problems here involved is
 
 California etc. Supplies
 
 v.
 
 Schultz,
 
 105 Cal.App. 471 [287 P. 980], In that case it appears that the defendant Schultz had owned and operated a corporation; the corporation sold its business to the plaintiff and there was contained in the contract of sale a provision that the selling company would not engage in a similar business in the same locality; after the sale was completed Schultz, individually, opened a similar competing business, and the action was
 
 *885
 
 brought to enjoin him. It was found by the trial court that the corporation which sold the business was, in fact, the
 
 alter ego
 
 of Schultz, and that therefore the corporate entity should be disregarded and - Schultz should be enjoined. This judgment was reversed because it was held that' the
 
 alter ego
 
 theory could not be used to give to the plaintiff something to which it was not entitled under the contract. It was held that because the contract provided that the corporation which sold the business would not engage in a similar business, and there was no provision by which" Schultz, the individual, agreed not to so compete, no injunction could properly be granted against him.
 

 Referring then to the instant cáse, it appears from the evidence that the defendant had' nothing whatever to do with the two corporations except to contract with them for materials and labor. Bills were rendered by the two corporations and were paid. Waivers of lien were executed and delivered to defendant. On the other hand, the plaintiff, a wholesaler of lumber, agreed to sell lumber to the Trus-Span Corporation as a dealer of materials. There were no representations to the plaintiff that Trus-Span was a contractor. Under such circumstances plaintiff was in the position of selling materials at wholesale to a corporation holding itself out as a retailer and which was in turn selling at a profit to the property owner. Under such circumstances plaintiff would not be entitled to a lien. It is true that TrusSpan failed to pay plaintiff. Had there been either allegation or proof that the defendant in any way conspired to produce such result, defendant might be held liable or a lien might effectually be placed upon its property. Here, however, it is sought to use the
 
 alter ego
 
 theory, not as against the parties who conducted the business in the name of the corporations, but against an innocent third party who has already paid for the materials. It is clear from the prior decisions of the California courts that the
 
 alter ego
 
 theory may not be used for such purpose.
 

 It is held that “. . . a corporate entity will not be disregarded where to do so would promote an injustice.” (18 C.J.S. 379;
 
 Nighbert
 
 v.
 
 First National Bank,
 
 26 Cal.App.2d 624 [79 P.2d 1105].)
 

 It was contended in the action of
 
 In re Lubliner & Trinz Theatres
 
 (7th Cir. 1938.) 100 F.2d 646, that the trial court properly refused to consider the matter of disregarding cor
 
 *886
 
 porate entity with the stockholders where not before the court. Among other things, the court said:
 

 11 There is no doubt that the courts have both the power and the duty to look through forms of corporate entity to the substance of the .transaction under investigation, when to do so will enable them to properly determine the questions actually presented for adjudication, and not to do so will cause a miscarriage of justice with respect to those questions. This rule does not go so far, however, as to authorize a court to disregard corporate entities in order to determine incidental matters between parties not connected with or helpful in the determination of the question under judicial investigation.”
 

 The judgment is reversed and the ease remanded, with directions to enter judgment for defendant.