[Civ. No. 24375. First Dist., Div. Two. Jan. 22, 1969.]

BLAKEMORE EQUIPMENT COMPANY, Plaintiff and Respondent, v. BRADDOCK, LOGAN & VALLEY et al., Defendants and Appellants.

Chandler & Bruner, Minder, Chandler & Bruner and Stephen M. Chandler for Defendants and Appellants.

J. Gordon Levinson, Levinson & Edgeman and James M. Fletcher for Plaintiff and Respondent.

TAYLOR, J.—Defendants appeal following judgment foreclosing a mechanic's lien on a residential subdivision in Contra Costa County.

The pertinent facts are not in dispute. The contractor on the Tara Hills subdivision was Braddock, Logan & Valley. The 20 corporations named in the complaint and the answer as owners of the subdivision were each owned by one or more of the contracting partners, and the building permit was taken out in the name of Braddock, Logan & Valley as "owner/builder." Braddock, Logan & Valley contracted with J. W. Lee & Company to do the grading and earth-moving work on the subdivision. Lee then contracted with Lloyd M. Greer and under this contract, Greer did almost all of the excavating and earth moving.

The pieces of equipment with which this appeal is concerned are: (1) two LeTourneau-Westinghouse CK Speedpulls rented by Blakemore to Ted and Maxeen Fisher and two days later rented by Fisher to Greer to be used on the Tara Hills job, and (2) a LeTourneau-Westinghouse Model B.

Tournapull rented by Blakemore to Fisher, which was also used on the job.

The equipment was rented from Blakemore to Fisher for a monthly rental and an option to purchase. The rental agreement to Greer from Fisher was based on a minimum two months' term and an hourly rental. The equipment was actually rented to Fisher for use on the Tara Hills job, although the contract provided that it could be used anywhere in California. Greer had discussed the rental of the equipment with French, Blakemore's salesman, prior to Greer's entering into the agreement with Fisher; and Greer and Fisher had discussed the use of "this equipment" (Blakemore equipment) prior to and at the time the equipment was rented. After the Blakemore equipment was on the job, French visited the job approximately twice a week, and while there, saw Lee and Greer at different times.

The subcontract between Lee and Braddock, Logan & Valley called for the furnishing of a bond but due to his poor financial condition, Lee was unable to obtain one. Greer was also unable to obtain a bond. The work was under way to such a degree that it was decided Lee and Greer should continue with their contracts without posting bond. Lee demanded that waivers of liens should be obtained and his attorney drew up waivers providing for an additional consideration of $1.00. Lee went to the job site and told the men that they had to sign the waivers or they would be terminated. One man was paid off and left the job; several others signed and were given their silver dollars. Fisher signed a waiver of lien on June 12, 1963.

Only partial payment for the use of the Blakemore equipment was made in the form of a $2,100 check which Greer made payable to Blakemore and Fisher. Blakemore filed its pre-lien notice and later a claim of lien. One piece of Blakemore equipment was sent to the job and began work on May 28; the other two began work about June 13. Their use was stopped on August 16 when it became evident that payment was not being made. Two of the machines were then moved to another job in Concord after the shutdown and after Fisher received permission from Blakemore.

 Appellants contend that the trial court erred in granting the judgment of foreclosure since Blakemore rented the three pieces of equipment to Fisher, who then rented them to Greer for use on the job. Appellants argue that Fisher was not a statutory agent of the owner within the meaning of

section 1182, subdivision (c) of the Code of Civil Procedure[1] and thus any contract made by Blakemore with Fisher could not result in Blakemore's obtaining a lien on the owner's property under section 1181.[2] We agree.

The trial court's finding that Blakemore *rented the equipment to Fisher* to be used on the Tara Hills job and that it was used on the job *with the knowledge of the defendant property owners* is not sufficient to support the judgment of foreclosure. Section 1181, as interpreted by our courts, requires that the lien claimant have a direct contract for the equipment rental with the owner of the land or his statutory agent. (*Theisen* v. *County of Los Angeles,* 54 Cal.2d 170, 177 [5 Cal.Rptr. 161, 352 P.2d 529]).

The evidence here would not support nor did the trial court find any contractual privity between Blakemore and the owners or their agents. In fact, the court's finding that Blakemore rented the equipment to Fisher negates such a relationship. There was no showing that Fisher was a "statutory agent" of the owner under the definition of Code of Civil Procedure section 1182, subdivision (c). He did not have "charge" of the construction in any of the work of improvement (*Theisen* v. *County of Los Angeles, supra*). Greer's foreman determined where and when Blakemore equipment was to be used on the job. Fisher worked for Greer, and considered himself a mere supplier of equipment.[3]

---

[1]Code of Civil Procedure section 1182, subdivision (c) provides that: "For the purposes of this chapter, every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, addition to, or repair, in whole or in part, of any building or other work of improvement shall be held to be the agent of the owner."

[2]Code of Civil Procedure section 1181 provides that "Mechanics, materialmen, contractors, subcontractors, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials to be used or consumed in, or furnishing appliances, teams, or power contributing to, the construction, alteration, addition to, or repair, either in whole or in part, of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances for the value of such labor done or materials furnished and for the value of the use of such appliances, teams, or power, *whether done or furnished at the instance of the owner or of any person acting by his authority or under him, as contractor or otherwise.*" (Italics added.)

[3]The trial court refused to make a finding that Fisher had charge of any part of the job under the provisions of Code of Civil Procedure section 1182 or that he was a statutory agent of the owner, even though a request for special findings on both of these matters was made.

Respondent asserts that since it furnished power to the work of improvement *with the owner's knowledge,* it falls within a separate class of persons entitled to a statutory lien and that the cases which hold that a supplier to a supplier has no lien against the owner's property *(Tarter, Webster & Johnson, Inc.* v. *Windsor Developers, Inc.,* 217 Cal.App.2d Supp. 875 [31 Cal.Rptr. 452]; *Theisen* v. *County of Los Angeles, supra)* apply to the furnishing of materials only. Respondent cites no authority for this proposition and in the application of the last sentence of section 1181 of the Code of Civil Procedure, we see no distinction between materials and working appliances furnished to the job. In both instances, the contract must be made directly between the supplier and the owner or his statutory agent.

Respondent cites *Halspar, Inc.* v. *La Barthe,* 238 Cal.App. 2d 897 [48 Cal.Rptr. 293], and other cases, together with section 1183.1, subdivision (b) of the Code of Civil Procedure, for the proposition that where appliances are furnished *with the knowledge of the owner, it is conclusively presumed that they are furnished at his instance and request* and that the necessary contractual privity for the application of a lien is established. However, section 1183.1, subdivision (b) must be read in conjunction with section 1183.1, subdivision (a)[4] and

---

[4]Section 1183.1:

"(a) The land upon which any building, improvement, well or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if at the commencement of the work, or of the furnishing of the material for the same, the land belonged to the person who caused said building, improvement, well or structure to be constructed, altered or repaired, but if such person owned less than fee simple estate in such land, then only his interest therein is subject to such lien, except as provided in paragraph (b) of this section.

"(b) Every building or other improvement or work mentioned in this chapter or in Section 3060 of the Civil Code or in Section 5463 of the Health and Safety Code constructed, altered or repaired upon any land with the knowledge of the owner or of any person having or claiming any estate therein, and the work or labor done or materials furnished mentioned in any of said sections with the knowledge of the owner or persons having or claiming any estate in the land, shall be held to have been constructed, performed or furnished at the instance of such owner or person having or claiming any estate therein, and such interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming any estate therein shall, within 10 days after he shall have obtained knowledge of such construction, alteration or repair or work or labor, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon the property, and shall also, within the same period, file for record a verified copy of said notice in the office of the county recorder of the said county

the presumption is applicable only in situations wherein the person originally contracting for the goods or services has some interest in the property, which is less than a fee simple.[5] Under such circumstances, 1183.1 permits a lien against the owner of the fee or other estate in the land who knows of the improvement unless he takes the required steps to protect himself (*Jay Bailey Constr. Co.* v. *Berry Hotel Corp.*, 221 Cal.App.2d 135 [34 Cal.Rptr. 272]; *Oil Tool Exchange, Inc.* v. *Hasson*, 4 Cal.App.2d 544 [41 P.2d 211]).

Respondent finally contends that appellants should be estopped from attacking the validity of its liens on the grounds that (1) the fundamental basis of the lien law is estoppel, citing *Nolte* v. *Smith*, 189 Cal.App.2d 140 [11 Cal. Rptr. 261, 87 A.L.R.2d 996], and (2) the inequitable acts of appellants in attempting to put the risk of possible loss on potential lien claimants. However, as stated in *Holm* v. *Bramwell*, 20 Cal.App.2d 332 at p. 334 [67 P.2d 114], mechanics liens are creatures of statute and therefore dependent upon at least substantial compliance with the law. Here, respondent failed to establish its statutory right to a lien.

The judgment imposing a lien upon appellants' property is reversed as it relates to the three pieces of equipment leased by Greer from Fisher.

Shoemaker, P. J., concurred.

A petition for a rehearing was denied February 10, 1969, and respondent's petition for a hearing by the Supreme Court was denied March 19, 1969.

in which said property or some part thereof is situated. Said notice shall contain a description of the property affected thereby sufficient for identification, with the name, and the nature of the title or interest of the person giving the same, name of purchaser under contract, if any, or lessee if known; said copy so recorded may be verified by anyone having a knowledge of the facts, on behalf of the owner or person for whose protection the notice is given.''

[5]Respondent improperly relies on *Linck* v. *Meikeljohn*, 2 Cal.App. 506 [84 P. 309]. That case permitted a materialman to have a lien on a building constructed by a trespasser where the building could be removed without injury to the land. The court observed, however: ''It is only when the land belongs to the person who caused the building to be constructed, or who has an interest therein, that such land or interest may also be charged.'' (P. 508.)

Respondent cites *Boscus* v. *Bohlig*, 173 Cal. 687 [162 P. 100], *Benson Elec. Co.* v. *Hale Bros. Associates Inc.*, 246 Cal.App.2d 686 [55 Cal.Rptr. 73], and *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.*, 251 Cal. App.2d 347 [59 Cal.Rptr. 587]. But these cases are not in point since they all involve situations where the laborer or materialman claiming the lien had made a contract with one having an interest in the land which was less than the entire fee.