46 F.3d 1145
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STAAR SURGICAL COMPANY, INC., Plaintiff-Appellant,
v.
MICROTECH SURGICAL ASSOCIATES, INC.; Microtech, Inc.;
Michael Bartell; Charles Mastellone, Defendants-Appellees.
 No. 93-56130.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Dec. 5, 1994.
Decided: Jan. 19, 1995.
 
 Before: SCHROEDER, FLETCHER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Staar Surgical Company, Inc. (Staar) appeals the district court's grant of summary judgment in favor of Microtech Surgical Associates, Inc.; Microtech, Inc.; Michael Bartell; and Charles Mastellone (collectively, Microtech). Staar sued Microtech in a diversity action based on California state law, alleging, inter alia, that Microtech had patented an intraocular lens (IOL) insertion device owned by Staar, and had disclosed and licensed the patent to Staar's competitor, Allergan, in violation of Microtech's Manufacturer's Representative Agreement with Staar.
 
 
 3
 The district court held that Counts I through V, and Count VII, of Staar's complaint were barred by applicable statutes of limitations and that consequently Counts VI and VIII failed to state a claim. We affirm.
 
 FACTS
 
 4
 In November 1984, Staar and Microtech entered into a three-year Manufacturer's Representative Agreement (Agreement). The Agreement authorized Microtech to act as a sales representative for Staar's products. The Agreement also provided that Staar would exclusively own "all developments, ideas, devices, designs, improvements, discoveries, apparatus, practices, processes, methods, concepts and products" developed during the term of the Agreement by Staar, Microtech Surgical, Bartell and Mastellone.
 
 
 5
 The Agreement further provided, in paragraph 6(d), that Microtech would not be precluded from using or disclosing any "Confidential Proprietary Information" which was already in its possession. A written addendum to the Agreement listed this information, which included an "Insertion device or 'glide' for insertion of silicone IOLs." Paragraph 6(a) of the Agreement stated that "[n]othing contained in this Agreement shall give [Staar] any rights to any inventions, designs, concepts or discoveries developed by [Microtech President Bartell] prior ... to the term of this Agreement."
 
 
 6
 Microtech, through Bartell, applied for a patent on a lens insertion device (the '102 patent). It also sought FDA approval for the device. As part of the FDA approval process, Bartell gave Staar copies of the FDA application and prototypes of its injector to test with Staar's IOLs. In February 1986, the FDA approved the device and Microtech began selling it.
 
 
 7
 One month later, in March 1986, Staar's President, Thomas Waggoner, wrote to Bartell and proposed buying all of Microtech's "rights, title, and interest in the [Bartell Lens Glide], including, but not limited to, all molds, parts, drawings, documents, and patent assignments." In return, Starr would "reimburse Microtech all documented out-of-pocket expenses incurred directly in the development of the [Bartell Lens Glide] and related items (patent expenses, etc.)" and issue "4,000 shares of its common stock to Microtech as full consideration."
 
 
 8
 In a letter dated March 12, 1986, Bartell responded, in pertinent part:
 
 
 9
 Microtech, Inc. is in receipt of your March 7th proposal to acquire the Bartell Small Incision Lens Glide.
 
 
 10
 This proposal varies so drastically from what we agreed to in New York that we have decided to continue to pursue the development of the product ourselves.
 
 
 11
 We will continue to make it available to interested surgeons until such time as someone can develop a better concept.
 
 
 12
 If Staar develops that concept, and it is determined that there's a conflict of interest, we will then withdraw from the market. Our intentions in developing the inserter were never meant to antagonize anyone.
 
 
 13
 We will entertain a proposal to license Staar to exclusive rights to distribute, or even manufacture, the disposable parts to the inserter. We will also consider an OEM relationship on the non-disposable parts at $375.00 each. Rights, title, and patent assignments are non-negotiable. They will remain with Microtech, Inc.
 
 
 14
 It was a business decision to develop this product during a very difficult personal time. Hopefully, good business sense will prevail in its disposition.
 
 
 15
 Despite Microtech's rejection of its offer, Staar sold some of Bartell's lens injectors on Microtech's behalf in 1986. That same year, Staar began marketing its own lens insertion device. In July 1987, the '102 patent was finally issued to Bartell. The following September, Microtech stopped marketing Bartell's injector.
 
 
 16
 In October 1989, Bartell assigned the '102 patent to Microtech. In turn, Microtech and Allergan entered into a licensing agreement, which, among other things, granted Allergan the right to sue for infringement of the '102 patent.
 
 
 17
 In November 1992, Allergan sued Staar for infringing the '102 patent. See Civ. No. 92-6976 (C.D. Cal.). On January 27, 1993, Staar sued Microtech, Bartell and Mastellone for breach of contract, specific performance, misappropriation of trade secrets, conversion and indemnification. An amended complaint filed April 2, 1993 added claims for breach of the covenant of good faith and fair dealing, breach of fiduciary duty and alter ego liability.
 
 
 18
 In its complaint, Staar alleged that the Bartell lens insertion device was simply a "raw concept" when the Agreement was signed. Staar further alleged that it, together with Bartell, transformed that concept into a product. Furthermore, Staar alleged Bartell applied for the '102 patent without its knowledge, authorization or consent. Thus, Staar contended that under the Agreement it exclusively owned the device, subject only to Microtech's right to use the "raw concept."
 
 
 19
 On April 19, 1993, the defendants moved to dismiss Staar's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim. Alternatively, the defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on the ground the complaint was barred by applicable statutes of limitations. On May 24, 1993, the district court heard the motions and subsequently granted summary judgment to Microtech. This appeal followed.
 
 DISCUSSION
 A. Standard of Review
 
 20
 We review de novo a grant of summary judgment. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). In our review we must determine whether there are any genuine issues of material fact when viewing the evidence in the light most favorable to the nonmoving party. Id.
 
 B. Statute of Limitations
 
 21
 1. Discovery Rule and the Conversion Claim (Count VII)
 
 
 22
 The discovery rule provides that a cause of action does not accrue until a plaintiff discovers, or should have discovered, all facts essential to its cause of action.[1] April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805 (1983).
 
 
 23
 Generally, the discovery rule does not apply in conversion actions. Nighbert v. First National Bank of Bakersfield, 26 Cal. App. 2d 624, 633-34 (1938). However, under the doctrine of "fraudulent concealment,"
 
 
 24
 the statute of limitations is tolled whenever plaintiff is able to show the defendant fraudulently concealed facts which would have led him to discover his potential cause of action.... Once a belated discovery is properly pleaded, the question becomes whether the failure to discover earlier the injury and its negligent cause was justifiable and reasonable so as to prevent the running of the statute of limitations.
 
 
 25
 Snow v. A.H. Robins Co., 165 Cal. App. 3d 120, 127-28 (Cal. Ct. App. 1985); see also Pashley v. Pacific Electric Railway Co., 25 Cal. 2d 226, 234-35 (1944).
 
 
 26
 We reject Staar's contention that Microtech's alleged concealment of its licensing agreement with Allergan tolled the statute of limitations. On Microtech's motion, the district court properly limited Count VII to paragraph 69(e) of Staar's complaint, which alleges Microtech failed and refused to return "tangible forms of confidential proprietary information" to Staar. See 5 Witkin Sec. 613 (9th ed. 1988) (citing Olschewski v. Hudson, 87 C.A. 282, 286 (1927); Restatement (Second) of Torts Sec. 242 (1965)) (under California law, conversion is limited to cases involving tangible personal property). Consequently, whether Microtech concealed the Allergan licensing agreement is irrelevant; as the district court held, the statute of limitations began to run when the Agreement expired in November 1987, and Microtech allegedly failed to return Staar's proprietary information. We therefore affirm the district court's determination that Staar's conversion claim is barred by the statute of limitations.
 
 
 27
 2. Statute of Limitations and the Remaining Claims
 
 
 28
 As to the remaining claims, the facts, when viewed in the light most favorable to Staar, indicate that by March 12, 1986, Staar had at least constructive, if not actual, notice of Microtech's ownership claim of the injector device. In rejecting Staar's purchase offer, Bartell unequivocally stated that "[r]ights, title, and patent assignments [to the injector] are nonnegotiable. They will remain with Microtech, Inc." He further informed Staar that, for a price, Microtech would consider licensing certain ownership rights to Staar. This put Staar on notice that Bartell claimed exclusive rights to the device.
 
 
 29
 The fact that Microtech delayed suing Staar for patent infringement does not affect this conclusion. Upon receipt of the March 12, 1986 letter, Staar knew, or should have known, that Microtech claimed the entire bundle of property rights with respect to the Bartell injector.
 
 
 30
 Staar's contention that it jointly developed the lens injector with Bartell and Microtech is without support in the record. To the contrary, the record indicates that Staar did not begin "developing" its own lens injector until April 1986, after Bartell had applied for and received FDA approval--and just one month after Bartell refused to sell his injector device to Staar.
 
 
 31
 The district court did not err in concluding that the statute of limitations had run on Counts I through V.
 
 C. Counts VI and VIII
 
 32
 Liability under Counts VI and VIII, alleging alter ego liability and indemnification respectively, is predicated on finding Microtech liable under any of Counts I through V, or Count VII. Because we affirm the district court's dismissal of the predicate counts, we also affirm the dismissal of Counts VI and VIII for failure to state a claim.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The relevant statutes of limitations in this case are as follows: 4 years for a cause of action based upon breach of a written contract, Cal. Code Civ. P. Sec. 337; 3 years for misappropriation, Cal. Civ. Code Sec. 3426.6; and 3 years for conversion, Cal. Code Civ. P. Sec. 338